[No. G013330. Fourth Dist., Div. Three. May 20, 1994.]

CINNAMON SQUARE SHOPPING CENTER, Plaintiff and Appellant, v. MEADOWLARK ENTERPRISES, Defendant and Respondent.

---

---

COUNSEL

Moffitt & Associates and James M. Spellmire for Plaintiff and Appellant.

Baker & Quella, William E. Baker, Jr., Mary Claire Quella, Johnson & Flyer and David R. Flyer for Defendant and Respondent.

---

OPINION

**RYLAARSDAM, J.***—Appellant, landlord, appeals from a judgment in favor of tenant in an unlawful detainer action. The trial court found that the amount demanded in the notice to pay rent exceeded the amount owed and hence was deficient. On that basis, the court held for tenant. Landlord contends (1) the court erred in awarding judgment to tenant since the latter failed to tender the amount of rent acknowledged to be due as required by Code of Civil Procedure section 1161.1; (2) the trial court improperly reformed the lease; and (3) there was insufficient evidence to support the judgment. We disagree with the last two contentions. Although section 1161.1 might have been invoked, landlord failed to do so in the court below; as a result, it has waived its rights under the section.

Tenant contends the appeal should be dismissed as moot since it has vacated the premises and an action is pending between the parties concerning the unpaid rent. Although there is nothing in the record to enable this court to determine tenant has, in fact, vacated the premises, counsel so stipulated during oral argument. We hold that, under the facts of this case, the restoration of possession to the landlord does not render the appeal moot.

I

In February 1991, the parties entered into a written lease for commercial property which tenant intended to use as a restaurant. The lease described the premises as being 10,000 square feet and fixed the rental as "$0.75 per square foot/month + CAM (NNN). Base rent = $7500./month with CPI increase yearly (3% minimum, 6% maximum) CAM (NNN) = $0.18/sq.ft./

---

*Judge of the Orange County Superior Court sitting under assignment by Chairperson of the Judicial Council.

month, adjust yearly. Rent payable at first of the month, late charge is 6% of the monthly rent if paid after 5th of month."

In July 1991, the parties entered into a written amendment to the lease which provided: "1. Base Rent: $6,000/month; 2. CAM charges: .18¢ ft$^2$ x 8000 ft$^2$ = $1440.00 (Base Rent + Cam) = TOTAL: $7440.00/mo.; 3. Rent Commences: September 1, 1991." The amendment also states, "The amendments in the lease are for the period that the liquor license issued as 'Conditional.' "

The dispute between the parties centers on the amendment. Tenant contends, and the trial court determined, it reflected an agreement to reduce the rent per square foot by 20 percent from $0.75 to $0.60 because of limitations placed on the liquor license issued to tenant and problems encountered with the building. Landlord contends the amendment was intended to maintain the original $0.75 per square foot rate but merely acknowledged a discovery that the premises were smaller than the parties had originally believed. The premises were, in fact, smaller and the issue was whether a rental rate of $0.75 or of $0.60 was to be applied to the agreed smaller size of the premises.

Yoshiko Horio, tenant's officer and manager, testified the reduction reflected in the amendment was agreed to when it was discovered tenant would only be able to obtain a conditional liquor license which, among other things, limited the hours of the restaurant's operation. As a result of this limitation, tenant decided not to use that portion of the restaurant which had been intended to be used as a nightclub. She stated she still believed that the total space was 10,000 square feet at that time.

According to Ms. Horio, tenant received blueprints of the building in August 1991, after the amendment was executed. She stated it was then discovered the total area subject to the lease measured only 7,612 square feet, and, under the applicable building codes this would reduce the capacity of the premises from approximately 500 to approximately 300 persons. Landlord, on the other hand, contends the July 1991 amendment to the lease was occasioned by the discovery the actual size of the premises was less than originally contemplated. Although landlord's representative, Kelly Hunter, testified the discrepancy in the size of the building had been discovered prior to the July 17, 1991, amendment to the lease, there is substantial evidence to contradict this, including some portions of Ms. Hunter's own testimony.

On February 10, 1992, landlord served notice demanding the payment of estimated rent, based on $0.75 per square foot applied to 7,612 square feet.

Other than an original deposit of $19,650, no rent was tendered or paid.[1] The court below determined this notice was deficient because it failed to grant tenant the 20 percent reduction in rent agreed upon in the amendment to the lease. The court awarded judgment to tenant on that basis.

## II

Tenant contends it has relinquished possession and the action is therefore moot. At oral argument the parties stipulated tenant has in fact vacated the premises. In support of its contention of mootness, tenant cites *Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541 [63 Cal.Rptr. 21, 432 P.2d 717], which holds appellate courts should not decide cases which have become mooted by subsequent events, unless certain exceptions apply. The question therefore is whether there were any issues decided in the court below other than the issue of possession. If none, tenant's position would be well taken.

In reply to tenant's mootness argument, landlord relies on *Union Oil Co.* v. *Chandler* (1970) 4 Cal.App.3d 716 [84 Cal.Rptr. 756] and *Lee* v. *Vignoli* (1979) 98 Cal.App.3d Supp. 24 [160 Cal.Rptr. 79]. Neither of these cases is determinative since in both instances it was the tenant who appealed after relinquishing possession pursuant to the judgment. Where the tenant is deprived of possession as a result of the judgment of the trial court, appellate relief might restore such possession. For example, in *Old National Financial Services, Inc.* v. *Seibert* (1987) 194 Cal.App.3d 460 [239 Cal.Rptr. 728], the tenant vacated the premises after filing a notice of appeal. The court held that the appeal by the tenant was not moot: "Seibert was compelled to give up possession pursuant to the judgment. The fact that he may have given up possession before he was formally evicted pursuant to the writ of execution does not make this appeal moot. Effective relief was available to Seibert if he had prevailed on appeal. Upon reversal of the judgment, this court would have been empowered to restore him to possession of the property." (*Id.* at p. 468.)

This differs from the situation where landlords, unsuccessful in their attempts to evict tenants, appeal. Once the tenant vacates the premises, the landlord has obtained the possession sought in the unlawful detainer action. If this were the only issue determined, the appeal would indeed be moot. The fact landlord also sought to recover back rent in the action would not necessarily change this result. Where, as here, the court determines the

[1]After the action was commenced, respondent paid the sum of $39,000 to appellant as a condition for the setting aside of its default.

landlord cannot prevail because of a deficiency in the notice to pay rent, the court may not have reached the issue of the amount of back rent owed. If so, this issue would remain to be resolved in a subsequent action to recover the unpaid rent.

This was not the case here however. Since the court's finding that the notice was deficient was based upon a determination landlord was entitled to a lesser sum than that demanded, the court necessarily determined and made findings as to the terms of the rental agreement and the amount of rent due. The trial court's determination the notice was deficient was based on the court's interpretation of the lease and an amendment thereto in the light of the evidence presented. Based on this, the court found the amount of rent was to be calculated on the basis of a formula urged by tenant. This issue having been actually litigated and determined in the action, the finding thereon will operate as collateral estoppel in any subsequent action to recover the rental obligation. (*Barker* v. *Hull* (1987) 191 Cal.App.3d 221, 225 [236 Cal.Rptr. 285].) Thus, landlord is entitled to have this court determine whether the trial court erred in its determination of the appropriate formula to be used to determine the rental obligation.[2]

### III

Landlord urges the failure of tenant to render the amount acknowledged to be due entitled it to judgment since its "Notice to Pay Rent" stated the amount demanded was designated as "estimated rent" and "estimated lease charges," as authorized by Code of Civil Procedure section 1161.1. Section 1161.1, adopted in 1990, applies to commercial real property. It provides that, if the landlord clearly indicates in the notice that the amount demanded is an estimate, and it is determined that the amount estimated was reasonable, the landlord will prevail in the unlawful detainer action, unless, the tenant has tendered the amount which it reasonably believes to be owed. Under Code of Civil Procedure section 1161.1, subdivision (e), where the landlord's excessive demand does not exceed 20 percent, the burden shifts to the tenant to prove that the demand was unreasonable. Here, the trial court determined that the amount of rent demanded exceeded the amount owed by exactly 20 percent.

---

[2]Respondents also were awarded costs and attorney fees in the amount of $23,325.25 in the action. Cases such as *Paul* v. *Milk Depots, Inc.* (1964) 62 Cal.2d 129, 134 [41 Cal.Rptr. 468, 396 P.2d 924] note that ". . . an appeal will not be retained solely to decide the question of liability for costs." We interpret this direction as granting discretion to the appellate court to refuse to decide a moot case where the only remaining issue is costs. In view of the amount of the costs herein, we would question the wisdom of mechanically denying review on this basis.

The trial court made no findings concerning the reasonableness of the discrepancy. This omission is easily explained by the failure of landlord to raise the issue in the court below. "As a general rule an appellate court will consider only such points as were raised in the trial court, and this rule precludes a party from asserting, on appeal, claims to relief not asserted or asked for in the court below." (*Hennefer* v. *Butcher* (1986) 182 Cal.App.3d 492, 505 [227 Cal.Rptr. 318]; see also *CNA Casualty of California* v. *Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 618 [222 Cal.Rptr. 276].) There is nothing in the record, including the pleadings, the statement of decision, the motion to vacate the judgment, or counsel's argument, to indicate landlord asked the court to consider its rights under Code of Civil Procedure section 1161.1. Landlord's failure to raise the issue below and its failure to request the trial court adjudicate the issue of the reasonableness of the amount of rent demanded precludes landlord from having this court determine the issue.

## IV

■ Landlord's remaining contentions boil down to an attack on the sufficiency of the evidence to support the decision of the trial court with respect to the 20 percent reduction. ■ "It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court." (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].) The same rule applies where the trial is to the court. (*Alderson* v. *Alderson* (1986) 180 Cal.App.3d 450, 465 [225 Cal.Rptr. 610].)

■ There was sufficient evidence to support the trial court's determination. The evidence is strong that the discrepancy in the size of the premises was not discovered until after the July 1991 amendment was executed. The reference to the liquor license in the amendment further supports a conclusion the reduction in rent reflected in that document pertains to problems other than the size of the premises. The statement the amendment was to be "for the period that the liquor license issued as 'conditional' " is of particular significance. If the amendment related to the size of the premises, the amendment would not have this temporary character. The reference to 8,000 square feet in the amendment, as distinguished from the actual square footage of 7,612 square feet used by both parties once

the actual size was determined, further supports a conclusion the amendment to the lease was entered into for reasons other than an awareness of the smaller size of the premises.

Application of the 20 percent reduction in rent reflected in the amendment to the correct square footage does not constitute a reformation of the lease as contended by landlord. Both the lease and the amendment contemplate rent is to be calculated on a square footage basis. Both parties acknowledged rent was to be computed on that basis. Once the court determined it was the intent of the parties to provide for a 20 percent reduction in the rent by way of the amendment to the lease because of the difficulties encountered with the liquor license, it became a mere mathematical exercise to determine the amount of rent owed.

The judgment is affirmed. Respondent shall recover its costs and fees on appeal.

Sills, P. J., and Sonenshine, J., concurred.

A petition for a rehearing was denied June 8, 1994.